1  Eric M. Fox Bar No. 274132
   eric.fox@ogletree.com
2  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
3  4660 La Jolla Village Drive, Suite 900
   San Diego, CA 92122
4  Telephone: 858-652-3100
   Facsimile: 858-652-3101
5
6  Attorneys for Defendants INNOVATIVE EMERGENCY
   MANAGEMENT, INC.; TED LEMCKE; DAN
   MICHAEL; and MADHU BERIWAL
7
8  Katherine S. Catlos, Bar No. 184227
   kcatlos@kaufmandolowich.com
9  Kartikey A. Pradhan, Bar. No. 291870
   kpradhan@kaufmandolowich.com
10 KAUFMAN DOLOWICH LLP
   425 California Street, Suite 2100
11 San Francisco, CA 94104

12 Attorneys for Defendants KLAP6 TECHNOLOGIES LLC; KAMALNATH
   NAGASUBRAMANIAM; and NARESH MADANLAL KORTHARI

13                 **UNITED STATES DISTRICT COURT**

14                **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 15 JENNIFER MACHADO and NADIA SCURRY, individually and as the State of California's designated proxies pursuant to the Private Attorneys General Act (PAGA) on behalf of the State of California and other aggrieved employees, | Case No. **'24CV1655 JO VET** |
| | **DEFENDANTS' INNOVATIVE EMERGENCY MANAGEMENT, INC.; TED LEMCKE; DAN MICHAEL; MADHU BERIWAL; KLAP6 TECHNOLOGIES LLC; NARESH MADANLAL KOTHARI; AND KAMALNATH NAGASUBRAMANIAM NOTICE OF REMOVAL OF CIVIL ACTION** |
| 19                    Plaintiffs, | |
| 20             v. | |
| 21 KLAP6 TECHNOLOGIES LLC, a California limited liability company; KAMALNATH NAGASUBRAMANIAM, an individual; NARESH MADANLAL KOTHARI, an individual; INNOVATIVE EMERGENCY MANAGEMENT, INC., a Louisiana corporation; TED LEMCKE, an individual; DAN MICHAEL, an individual; MADHU BERIWAL, an individual; and DOES 6 through 50, | *[Filed concurrently with: 1) Civil Cover Sheet; 2) Notice of Interested Parties; 3) Declaration of Brad Tiffee; 4) Declaration of KLAP6 Officer K. Nagasubramanium; 5) Declaration of Ted Lemcke; 6) Declaration of Dan Michael; 7) Declaration of Madhu Beriwal; 8) Declaration of Naresh Mandalal Kothari; 9) Declaration of Kamalnath Nagasubramaniam; 10) Declaration of Eric Fox; 11) Declaration of Katherine S. Catlos]* |
| 27                  Defendants. | Complaint Filed: May 16, 2023 Removal Filed: |
| 28 | |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendants INNOVATIVE EMERGENCY MANAGEMENT, INC. ("IEM");[1] TED LEMCKE; DAN MICHAEL; MADHU BERIWAL; KLAP6 TECHNOLOGIES ("KLAP6"); KAMALNATH NAGASUBRAMANIAM; AND NARESH MADANLAL NOTHARI ("collectively, Defendants"), hereby remove this action from the Superior Court of the State of California, County of San Diego, to the United States District Court for the Southern District of California under 28 U.S.C. § 1332(d) (the Class Action Fairness Act ["CAFA"]) and § 1446 because (1) Plaintiffs and other members of the putative class are citizens of a State different from at least one Defendant; (2) the number of members of all proposed plaintiff classes in the aggregate is over 100; and (3) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. All CAFA requirements are satisfied here. Alternatively, Defendants remove this action under diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

The foregoing facts were true when Plaintiffs filed their Class Action Complaint ("Complaint") and remain true as of the date of filing this Notice of Removal. Removal jurisdiction is therefore appropriate as detailed more fully below.

## I.    THE STATE COURT ACTION

1.    On May 16, 2023, Plaintiffs Jennifer Machado ("Machado") filed a Complaint in the Superior Court of California, County of San Diego captioned *Jennifer Machado, et al. v. Klap6 Technologies LLC, et al.*, Case No. 37-2023-00020925-CU-OE-CTL ("Action"). *See* Declaration of Katherine S. Catlos ("Catlos Decl."), ¶ 2. A copy of the Complaint is attached as **Exhibit 1.** On May 30, 2024, Plaintiff Nadia Scurry ("Scurry") filed a Complaint in the Superior Court of California,

---

[1] Now conducting business as IEM International, Inc.

County of San Diego captioned *Nadia Scurry, et al. v. Klap6 Technologies LLC, et al.*, Case No. 37-2023-00020638-CU-OE-CTL ("Action") on May 30, 2023. *See* Catlos Decl., ¶ 3. A copy of the Complaint is attached as **Exhibit 2.** On August 17, 2023, Machado filed a First Amended Complaint ("FAC") . *See* Catlos Decl., ¶ 4. A copy of the FAC is attached as **Exhibit 3.** On June 10, 2024, Machado amended the LWDA Notice pursuant to the Private Attorney General Act ("PAGA") to add Naresh Kothari, Innovative Emergency Management, Inc. Madhu Beriwal, Ted Lemcke and Dan Michael. *See* Catlos Decl., ¶ 5. A copy of the FAC is attached as **Exhibit 4.** On July 31, 2024, the Court issued an order consolidating the Machado and Scurry matters and requiring Machado and Scurry to file a Consolidated Complaint. *See* Catlos Decl., ¶ 6.

2.    On August 9, 2024, Machado and Scurry filed a Second Amended Consolidated Complaint ("SAC"), which is the operative complaint in the Action. Catlos Decl., ¶ 7. A copy of the SAC is attached as **Exhibit 5.**

3.    Defendants Lemcke, Michael, and Beriwal were personally served with the SAC on August 15, 2024. Lemcke Decl., ¶ 3; Michael Decl., ¶ 3; Beriwal Decl., ¶ 3. Defendants Lemcke, Michael, and Beriwal were previously Doe Defendants and were only named and identified subsequently in the SAC. *See* Declaration of Eric M. Fox ("Fox Decl."), ¶ 3.

4.    Defendants Lemcke, Michael, and Beriwal have not filed a responsive pleading. *See* Fox Decl., ¶ 4.

5.    Defendant IEM has not been served. *See* Declaration of Brad Tiffee ["Tiffee Decl."], ¶ 3.

6.    Machado and Scurry have not re-served the SAC on Defendants Klap6 and Nagasubramanium and have not served the SAC on Defendant Kothari who was added to the Action as a Doe Defendant on July 11, 2024. *See* Catlos Decl., ¶ 8.

II.    **THE REMOVAL IS TIMELY**

7.    Under 28 U.S.C. § 1446(b) and Federal Rule of Civil Procedure 6(a),

Defendant's deadline to remove the Action is within 30 days after the receipt of the Complaint. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 US 344, 354 (1999). Here, the deadline to remove is September 16, 2024; therefore, this Notice of Removal is timely.

## III.    REMOVAL IS PROPER UNDER CAFA

8.    CAFA grants district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant; the number of members of the proposed class is over 100 in the aggregate; and where the matter in controversy exceeds the sum or value of $5 million, exclusive of interests and costs. 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions under 28 U.S.C. § 1446.

9.    Removal is proper given Plaintiffs' allegations and claims. The SAC asserts these claims on a class basis: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Pay Wages Timely; (4) Failure to Comply with Meal and Rest Break Laws; (5) Failure to Provide Accurate Wage Statements; (6) Failure to Reimburse Expenses; (8) Private Attorneys General Act; and (9) Violation of Business and Professions Code §§ 17200, et seq., among other claims.

10.    As detailed below, this Court has jurisdiction over the Action under CAFA because it is a civil case filed as a class action wherein at least one member of the putative class of plaintiffs is a citizen of a state different from a Defendant; the number of potential class members is over 100; and the matter in controversy exceeds $5 million, exclusive of interest and costs.

### A.    CAFA's Diversity of Citizenship Requirement Is Satisfied

11.    CAFA's diversity requirement is satisfied "so long as 'any member of a class of plaintiffs is a citizen of a state different from any defendant.'" *Bradford v. Bank of Am. Corp.*, 2015 WL 5311089, at *3 (C.D. Cal. Sept. 10, 2015); citing, *California v. InelliGender, LLC*, 771 F.3d 1169, 1172 (9th Cir. 2014); 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a), (b).

Case No.

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

12.    <u>Citizenship of Plaintiffs and putative class members</u>. At all relevant times, at least one Plaintiff was a citizen of California. *See* Ex. 2 [SAC], ¶ 9. Members of the proposed class, who by definition are or were employed in California, are presumed to be primarily citizens of the State of California. *See* Ex. 2 [SAC], ¶¶ 56-57; *See, e.g., Lew v Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" is an important factor weighing in favor of citizenship).

13.    <u>Citizenship of Defendant</u>. Under 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The Supreme Court established the proper test for determining a corporation's principal place of business for diversity jurisdiction. *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). The "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id*. at p. 1184. It is the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control and coordination." *Id*.

14.    At all relevant times, Defendant IEM has been a citizen of Delaware and North Carolina. *See* Tiffee Decl., ¶ 2. IEM was organized under the laws of the State of Delaware with its principal place of business in North Carolina. *Id*. IEM's principal address, along with its Chief Executive Officer, Secretary, and Chief Financial Officer are located in Morrisville, North Carolina. *Id*. IEM is headquartered in North Carolina and its core executive and administrative functions occur there. *Id*.

At all times relevant to this Action, Defendant Klap6 has been a citizen of Texas. *See* Declaration of Klap6 Officer Nagasubramanium ["Klap6 Decl."], ¶ 3. Klap6 was formed as a California Limited Liability Company on June 4, 2018 and converted out on July 27, 2021. Klap6 Decl., ¶ 2. After the conversion, Klap6 has been operating under the laws of the State of Texas with its principal place of business in Texas. Klap6

Decl., ¶ 3. Klap6's principal address, along with its Chief Executive Officer, Secretary, and Chief Financial Officer are located in Frisco, Texas. *Id*. Klap6 is headquartered in Texas and its core executive and administrative functions occur there. *Id*.

15.     Defendant Ted Lemcke is the Chief Technology Officer ("CTO") of Innovative Emergency Management, Inc. (now "IEM International, Inc." or "IEM"). ["Lemcke Decl."], ¶ 2. He has been in this position since January 2020. See *Id*. Defendant Ted Lemcke was personally served with the SAC on August 15, 2024, in his home in North Carolina. *Id.* at ¶ 3. He has been a citizen of North Carolina since 2011. *Id.* at ¶ 4.

16.     Defendant Dan Michael was the Chief Financial Officer ("CFO") for Innovative Emergency Management, Inc. (now "IEM International, Inc." or "IEM") from 2015 to June 2024. ["Michael Decl."], ¶ 2. Defendant Dan Michael was personally served with the SAC on August 15, 2024, in his home in North Carolina. *Id.* at ¶ 3.  He has been a citizen of North Carolina since 2015. *Id.* at ¶ 4.

17.     Defendant Madhu Beriwal is the Founder and Chairwoman for Innovative Emergency Management, Inc. (now "IEM International, Inc." or "IEM"). ["Beriwal Decl."], ¶ 2. She previously served as President and Chief Executive Officer from 1985 until January 2024. See *Id*. Defendant Madhu Beriwal was personally served with the SAC on August 15, 2024, in her home in North Carolina. *Id.* at ¶ 3.  She has been a citizen of North Carolina for over 13 years, other than one year when she resided in Florida, and previously resided in Louisiana. *Id.* at ¶ 4.

18.     Defendant Kamalnath Nagasubramaniam has been a citizen of Texas. *See* Declaration of Kamalnath Nagasubramaniam ["Nagasubramaniam Decl."], ¶ 2. He has lived in Texas since 2021. *Id*.

19.     Defendant Naresh Madanlal Nothari has been a citizen of Texas. *See* Declaration of Naresh Madanlal Nothari ["Nothari Decl."], ¶ 2. He has lived in Texas since 2009. *Id*.

20.     The Defendants are citizens of Delaware, North Carolina, and Texas,

which are different states than the citizenship state of at least one Plaintiff and the putative class's citizenship in California, the minimal diversity of citizenship requirement under 28 U.S.C. § 1332(d)(2) is met.

**B.    CAFA's Class Size Requirement Is Satisfied**

21.    Plaintiffs bring this Action pursuant to California Code of Civil Procedure § 382 on behalf of numerous subclasses (collectively defined as the "Class"), including persons that fall within this category:

> All persons Defendants employed in California as non-exempt employees at any time from May 30, 2019, to the present who were issued wage statements from Defendant KLAP6 TECHNOLOGIES LLC. Ex. 2 [SAC], ¶ 57.

22.    From May 30, 2019, through the date of this Notice of Removal, Klap6 employed approximately 195 putative class members in California. Klap6 Decl., ¶ 7. Thus, CAFA's size requirement of at least 100 members is satisfied.

**C.    CAFA's $5 Million Amount in Controversy Requirement Is Satisfied**

23.    CAFA authorizes the removal of class action cases in which the amount in controversy for all class members exceeds $5 million. 28 U.S.C. § 1332(d).

24.    Under CAFA, the "District Court [must] determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [a plaintiff's] proposed class and determine whether the resulting sum exceeds [$5 million]." *Standard Fire Insurance Co. v. Knowles*, 133 S.Ct. 1345, 1348 (2013). For removal, "[t]he court accepts the allegations in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806s, 807 (9th Cir. 2017) (citing *Campbell v. Vitran Express, Inc.*, 471 F. App'x. 646, 648 (9th Cir. 2012).

25.    Plaintiffs seek the recovery of meal and rest period premium pay, unpaid wages (including minimum wages, regular rate wages, overtime wages),

itemized wage statement penalties, and waiting time penalties on behalf of himself and the putative class. (*See* Ex. 2 [SAC].). The Complaint, on its face, satisfies the $5 million threshold for CAFA Removal. *See* 28 U.S.C. § 1332(d).

### 1.     Alleged Meal Break Violations

26.     In support of their meal break cause of action, Plaintiffs allege they and the putative class members were required to work "ten hour shifts, yet Defendants only provided one meal break, not two as required under California law." Ex. 2. [SAC], at ¶ 45. For this, Plaintiffs seek to recover on behalf of themselves and other putative class members premium pay for each missed meal break. *See* Ex. 2 [SAC], ¶ 134. Plaintiffs allege meal period violations under the UCL, which has a four (4) year statute of limitations. Cal. Bus. & Prof. Code § 17208; Ex. 2 [SAC], at ¶¶ 178-186.

27.     Klap6's calculation of Plaintiffs' claims for meal period violations is at least **$69,080.02** ($20.14 avg. hourly rate x 1 meal premium per week x 3,430 workweeks). This computation is based on corporate business records that show putative class members have worked at least 3,489 workweeks since May 30, 2019, and at an average regular rate of $20.14 per hour, and the assumption that each putative class member incurred one meal period violation for every workweek. Klap6 Decl., ¶¶ 6-8.

28.     When determining the amount placed in controversy by a plaintiff's allegations regarding a common practice of meal period violations like those alleged by Plaintiffs in the SAC, an estimate of one meal period violation for every week of work is both reasonable and conservative. Ex. 2 [SAC], ¶¶ 44-47; *See, e.g., Campbell v. Vitran Exp., Inc*., 471 Fed. Appx. 646, 649 (9th Cir. 2012); *Mackall v. Healthsource Glob. Staffing, Inc*., 2016 WL 4579099, at *5 (N.D. Cal. Sept. 2, 2016) (acknowledging that multiple decisions from the Northern District of California have recognized assumptions of one missed meal period per week as "reasonable in light of policy and practice allegations and allegations that defendants' 'regularly' denied class

member breaks."); *Unutoa v. Interstate Hotels & Resorts, Inc*., 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) (approving of defendant's assumption that class members missed one required meal period per week).

### 2. Alleged Rest Break Violations

29.     In support of their rest break cause of action, Plaintiffs allege that Defendant failed to provide rest periods to Plaintiff and the putative class members "because Plaintiffs were always on-call during their shifts." Ex. 2 [SAC], at ¶ 46. For this, Plaintiffs seek to recover on behalf of themselves and other putative class members premium pay for each missed rest break. Ex. 2 [SAC], ¶ 134. Plaintiffs allege rest period violations under the UCL, which has a four (4) year statute of limitations. Cal. Bus. & Prof. Code § 17208; Ex. 2 [FAC], at ¶ 178-186.

30.     Klap6's calculation of Plaintiffs' claims for rest period violations is at least **$69,080.20** ($20.14 avg. hourly rate x 1 rest premium per week x 3,430 workweeks). This computation is based on corporate business records that show putative class members have worked 3,430 workweeks since May 30, 2019, and at an average regular rate of $20.14 per hour, and the assumption that each putative class member incurred one rest period violation for every workweek. Klap6 Decl., ¶¶ 6-8.

### 3. Wage Statement Penalties

31.     Plaintiffs seek penalties for allegedly inaccurate wage statements under California Labor Code § 226 on behalf of themselves and the putative class. Ex. 2 [SAC], at ¶¶ 58, 139-144. Plaintiffs allege the wage statements were deficient because "the wage and earning statements it issued to the named Plaintiff and Aggrieved Employees are missing information," "failed to set forth the proper regular rate when calculating overtime when commissions and other non-discretionary compensation was paid to the Aggrieved Employees," among other allegations. *Id*. at ¶ 33-34.

32.     Plaintiffs' wage statement claim is derivative of their allegations that Defendants had a policy and practice to deny putative class members the opportunity

to take meal and rest periods and a policy and practice to not pay for off-the-clock work. The SAC alleges that all wage statements were inaccurate for each pay period for every single putative class member, *i.e.*, a 100% violation rate.

33.    Section 226(e) provides penalties for inaccurate wage statements as follows: the "greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)."

34.    An estimated 100% wage statement violation rate for purposes of removal is reasonable in light of the allegations in Plaintiff's SAC. *See, e.g., Baker v. Propak Logistics, Inc.*, 2019 WL 4168998, at *4 (C.D. Cal. Sept. 3, 2019); *Mendoza v. Nat'l Vision, Inc.* (2019) WL 2929745, at *6 (N.D. Cal. July 8, 2019) (approving of 100% wage statement violation rate); *Gipson v. Champion Home Builders, Inc.*, 2020 WL 4048503, at *8 (E.D. Cal. July 20, 2020) (100% assumed violation rate was reasonable).

35.    There are 3,430 wage statements issued to at least 188 non-exempt employees in California as employees were paid weekly. (Klap6 Decl., ¶ 7.)

36.    Assuming a 100% violation rate, based on Plaintiffs' allegations, the amount in controversy for this claim is **$333,700** (188 initial wage statements x $50 = $9,400; 3,242 [Total Wage Statements – 188 initial wage statements] subsequent wage statements x $100 = $324,200 [$9,400 + $324,000 = $333,700]). Defendants reserves the right to provide additional evidence and argument about this category.

37.    If the maximum penalty could be imposed, then this claim for non-complaint wage statements could reach as high as $752,000. At the maximum penalty of $4,000 per violation times the 188 putative class members, the potential damages would be $752,000 ($4,000 x 188 employees).

### 4.    Waiting Time Penalties

38.    Plaintiffs seek waiting time penalties under California Labor Code §

203 on behalf of themselves and other class members who are no longer employed by Klap6. Ex. 2 [SAC], ¶¶ 117 - 131.).

39.    California Labor Code § 203 provides that "[i]f an employer willfully fails to pay… any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." A three-year statutory period applies to Plaintiffs' claim for waiting time penalties. *Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1398 (2010).

40.    From May 30, 2020, to the Notice of Removal, Klap6 severed employment with all 188 non-exempt employees in California, and their average hourly rate was approximately $20.14. This equals an average daily rate (8 hours) of approximately $161.12. Klap6 Decl., ¶ 6. Thus, the amount in controversy for waiting time penalties is at least **$908,716.80** ($20.14 average hourly rate x 8 hours x 30 days x 188 putative class members).

### 5.    Alleged Unpaid Expense Reimbursement

41.    Plaintiffs allege Defendants failed to reimburse employees for work related expenses. Ex. 2 [SAC], ¶¶ 48-51. In part, Plaintiffs allege a policy of "encouraging Aggrieved Employees to use their personal smart phones during the workday, especially for using the google translate application when communicating with the hundreds of illegal migrants her employer was hired to accommodate. Defendants, however, failed to reimburse Aggrieved Employees for the above-described work-related use of their personal phones in violation of California law." *Id.*

42.    Courts in this district have generally approved defendants using a $20-$25 per month assumed reimbursement rate for this claim. *See, Vallejo v. Sterigenics U.S. LLC*, 2021 WL 2685348, at *6 (S.D. Cal. June 29, 2021) (approving $25/month reimbursement rate for amount in controversy); *Shachno v. Marriott International,*

*Inc., supra,* 2023 WL 316367 at *11 (approving $20/month reimbursement rate for amount in controversy); *Evers v. La-Z Boy Inc.*, 2022 WL 2966301 (S.D. Cal., July 27, 2022) (applying $24/month for allegedly unreimbursed personal cell phone expenses).

43.    Based on the above facts and allegations contained in Plaintiffs' SAC, Defendant's calculation of Plaintiffs' claims for unreimbursed business expenses is at least $**17,115.00** ($5.00 x 3,430 workweeks). The computation of the amount in controversy is based on a conservative calculation that the minimum 188 putative class members worked at least 3,430 weeks during the Applicable Period, that each putative class member incurred $5.00 of unreimbursed business expenses per week.

## 6.    Alleged Unpaid Wages, Including Minimum Wage and Overtime Time

44.    Plaintiffs allege Defendants "failed to pay Aggrieved Employees all wages, e.g., overtime, minimum wages, etc., as required by law." Ex. 2 [SAC], ¶¶ 37-43.

45.    Labor Code Section 1194(a) provides: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

46.    California Labor Code § 510 provides, inter alia, that any work in excess of 8 hours in a workday or 40 hours in a workweek shall be compensated at one and one-half times an employee's regular rate of pay. Any work a non-exempt employee conducts over 12 hours in one day or 8 hours per day on the seventh consecutive day of work shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

47.    **Allegedly Unpaid Minimum Wages:** Based on the above facts and

allegations contained in Plaintiffs' SAC, Defendant's calculation of Plaintiff's claims for unpaid minimum wages is **$54,880** ($16 x 1 hour x 3,430 workweeks). The computation of the amount in controversy is based on a conservative calculation that the minimum 188 putative class members worked at least 3,430 weeks, that each putative class member earned a regular rate of no less than $16.00 per hour[2], and that each putative class member incurred one (1) hour of unpaid minimum wage for every week of work.

48.     An estimate of one hour of unpaid wages for every workweek has been accepted by the federal courts as a reasonable and conservative figure. See *Kincaid v. Educ. Credit Mgmt. Corp.*, 2022 WL 597158, at *3 (E.D. Cal. Feb. 28, 2022) (finding assumption of 1 hour of unpaid minimum wage per week was reasonable given the Complaint's lack of specific allegations to the contrary); *Kastler v. Oh My Green, Inc.*, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) (stating that an assumption of 1 hour of unpaid minimum wage per week was a "conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations"); *Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *5 (finding reasonable Defendant's assumption that the class members were not compensated for one hour of minimum wages per work week where plaintiff alleged a "pattern and practice" of wage abuse); *Soto v. Greif Packaging*, LLC, 2018 WL 1224425, at *3 (C.D. Cal. Mar. 8, 2018) (finding allegation that defendant failed to pay minimum wage for all hours worked on a "consistent and regular basis" sufficient to support estimate of one hour per week per class member); *Patel v. Nike Retail Servs.*, Inc., 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (approving one hour of unpaid wages "to be appropriately considered toward the amount in controversy"). This is especially the case where, as

---

[2] California has raised minimum wage throughout the period covered by this matter. Defendants, for ease of calculation, have relied upon the current minimum wage as published in the Department of Industrial Relations Minimum Wage Order.

here, the plaintiff fails to provide specific allegations concerning the frequency of which he worked unpaid wages without being provided the requisite compensation. *See Byrd v. Masonite Corp.*, 2016 WL 2593912, at *5 (C.D. Cal. May 5, 2016).

49.    **<u>Allegedly Unpaid Overtime Wages:</u>** Based on the above facts and allegations contained in Plaintiffs' SAC, Defendants' calculation of Plaintiff's claims for unpaid overtime wages is **$103,620.30** ($20.14 x 1.5 hours x 3,430 workweeks). The computation of the amount in controversy is based on a conservative calculation that the minimum 188 putative class members worked at least 3,430 weeks, that each putative class member earned an average hourly rate of $20.14, and that each putative class member incurred 1.5 hours of unpaid overtime wage for every week of work.

50.    Courts have found it reasonable to assume 1.5 hours or more of unpaid overtime per week based on allegations similar to those present in Plaintiff's SAC. See, e.g., *Andrade v. Beacon Sales Acquisition, Inc.*, 2019 WL 4855997 (C.D. Cal. Oct. 1, 2019) (one hour off-the-clock work and two hours of uncompensated overtime per workweek was reasonable based on allegations that the violations occurred "as matters of policy and/or practice"); *Cavada v. Inter-Continental Hotels Group, Inc.*, 2019 WL 5677846 (S.D. Cal. Nov. 1, 2019) (one hour off-the-clock work and two hours of uncompensated overtime per workweek was reasonable complaint alleged "systematic scheme" to refuse to pay overtime and uniform policy and practice that failed to accurate record overtime worked); *Torrez v. Freedom Mortgage, Corp.*, 2017 WL 2713400, at *4 (C.D. Cal. Jun. 22, 2017) (finding that assumption of three hours of unpaid overtime per week was reasonable where complaint contained generic allegations of a failure to pay for all regular and/or overtime wages); *Rivera v. Agreserves, Inc.*, 2023 WL 5202575 (Aug. 14, 2023) (assumption of 1.5 hours of unpaid overtime wages appropriate where complaint alleged that putative class members consistently worked over eight hours per day but were not paid for their overtime hours'"); *Stanley v. Distrib. Alts., Inc.*, 2017 WL

6209822, at *2 (C.D. Cal. Dec. 7, 2017) (holding violation rate of "two hours of overtime" reasonable where the complaint alleged a "'pattern and practice' of wage and hour violations" but "no guidance as to the frequency of these violations" and there was "no competing evidence that would suggest lower violation rates").

51.  In sum, the unpaid wages claim, including minimum wage and overtime, is at least $158,500.30.

### 7.  <u>Alleged Failure to Maintain Records</u>

52.  California Labor Code section 1174 requires that employers maintain records showing the names and addresses of all employees. Cal. Lab. Code § 1174, subd. (c). Employers are also required to maintain payroll records which hours worked and wages paid to its employees. Cal. Lab. Code § 1174, subd. (d). Records are required to be maintained for three years. *Id.* Failure to maintain these records can result in a $500 penalty. Cal. Lab. Code § 1174.5.

53.  Here, Plaintiffs contend that Defendants failed to maintain any of the required records for the entire putative class. Ex. 2 [SAC] ¶¶ 145-149. Therefore, assuming Plaintiffs' allegations are true, Defendants could face penalties of up to **$94,000** (188 employees x $500).

### 8.  <u>Alleged Failure to Pay Sick Pay</u>

54.  Plaintiffs contend that Defendants failed to pay putative class members their sick pay. Ex. 2 [SAC] ¶¶ 157-167. California law requires that employees be given no less than three sick days or a lump sum of five sick days Cal. Labor Code § 246. If paid sick leave is withheld, the penalties are the dollar amount of sick days withheld from the employee, multiplied by three or $250, whichever is greater, not to exceed an aggregate penalty of $4,000. Cal. Labor Code § 248.5, subd. (b)(2).  Here, assuming that each of the 188 employees was denied one day of sick leave, then there would be **$90,871.68** ($20.14 per hour x 8 hour day x 3 x 188 employees).[3]

---

[3] Defendants include this section for removal purposes and reserve their rights to argue that Plaintiffs do not have the private right of action to pursue this claim or that

## 9.    <u>Private Attorney General Act Penalties</u>

**55.**    Plaintiffs seek penalties under the California Private Attorneys General Act ("PAGA"). Courts include PAGA penalties to satisfy CAFA's removal statutes. *See Ford v. CEC Entertainment, Inc.*, 2014 WL 3377990, \*6 (N.D. Cal. July 10, 2014) (concluding that CAFA's amount in controversy requirement was satisfied after including PAGA penalties). Courts evaluate PAGA penalties for removal at 25% of maximum value as the remaining 75% is due to the state. *See Smith v. Brinker Intern., Inc.*, 2010 WL 1838726 (N.D. Cal. May 5, 2010).

**56.**    Here, Plaintiffs seek PAGA penalties for all violations of the Labor Code. PAGA penalties are generally $100 for the initial violation and $200 for the subsequent violation, unless a specific penalty is ascribed by law. Cal. Lab. Code § 2699.[4] Violations of the minimum wage law, failure to provide meal breaks, and failure to provide rest breaks are assessed at $50 for the initial violation and $100 for subsequent violations. Cal. Lab. Code § 558. For failure to keep records, PAGA penalties are $250 for the initial violation and $1,000 for subsequent violations. Cal. Lab. Code § 226.3. These penalties are assessed on a per pay period basis. Cal. Lab. Code § 2699.

**57.**    Plaintiffs allege that every single pay statement for every employee was a violation of PAGA. Therefore, under the removal analysis, there should be $50 penalties for the alleged initial violation of minimum wage, meal break, and rest break laws, and $100 for all subsequent alleged violations. Additionally, there should be $100 penalties for the initial violation of overtime, failure to timely pay, inaccurate wage statements, failure to reimburse claims, and failure to pay sick pay,

the $4,000 aggregate applies across the entire putative class.

[4] On July 1, 2024, PAGA was amended which included altering the penalty structure for alleged violations. However, as this matter was initially filed before law was amended, and Defendants believe that Plaintiffs will argue that they are entitled to the pre-amendment penalties, Defendants rely upon and use the pre-amendment penalties for this analysis.

and $200 for all subsequent alleged violations. There should be $250 penalties for initial violations of failure to keep records and $1,000 for all subsequent violations.

58.     Under this analysis, for removal purposes, Defendants' calculation of potential exposure is $1,907,261. Minimum wage alleged exposure would be $333,600 (($50 x 188) + (3,242 x $100)). Meal break violations penalties would be $333,600 (($50 x 188) + (3,242 x $100)). Rest break violations penalties would be $333,600 (($50 x 188) + (3,242 x $100)). Overtime violations would be $667,200 (($100 x 188) + (3,242 x $200)).

59.     Failure to timely pay would be $667,200 (($100 x 188) + (3,242 x $200)). Failure to provide accurate wage statements would total $667,200 (($100 x 188) + (3,242 x $200)). Failure to provide reimbursements would be $667,200 (($100 x 188) + (3,242 x $200)). Failure to pay sick pay would add up to $667,200 (($100 x 188) + (3,242 x $200)). Plaintiffs' claim for failing to maintain records would total $3,289,000 (($250 x 188) + (3,242 x $1,000)).

60.     These penalties would total $7,629,042 ($333,600 + $333,600 + $333,600 + $667,200 + $667,200 + $667,200 + $667,200 + $667,200 + $3,289,000). At the 25% level that is used for removal purposes, the total is **$1,907,261** ($7,629,042 x .25).

### 10.    Unfair Business Practices

61.     Plaintiffs allege that Defendants have committed unfair business practices by committing all of the alleged wage-and-hour violations. Ex. 2 [SAC], ¶¶ 178-186. California law prohibits any "unlawful, unfair or fraudulent business practice or act" that an employer may take. Cal. Bus. & Prof. Code § 17200. Any claim for unpaid wages can be a claim for unfair business practices. *Mewawalla v. Middleman*, 601 F.Supp.3d 574, 611 (N.D. Cal. May 2, 2022).

62.     A civil penalty of up to $2,500 may be assessed for each unfair business practice. Cal. Bus. & Prof. Code § 17206. Plaintiffs seek disgorgement of profits and "maximum civil penalties" available. Ex. 2 [SAC], Prayer, ¶¶ 1-15.

63.     Since Plaintiff contends that each payment to the putative class members was improper and resulted in unpaid wages, each wage statement would constitute an unfair business practice. Even at a conservative, non-maximum civil penalty of $1,000 per pay statement, the potential penalties would **$3,430,000** (3,430 x $1,000).

### 11.    Attorney's Fees

64.     Based on the above claims, Defendants have demonstrated that at least **$7,247,775** ($69,080.02 + $69,080.02 + $169,450.00 + $333,700 + $908,716.80 + $17,115.00 + $54,880 +$103,620.30 + $94,000 + $90,871.68 + $1,907,261 + $3,430,000) is in controversy based on Plaintiffs' allegations.

65.     Plaintiffs also seek attorney fees. Ex. 2 [SAC] Prayer for Relief, ¶¶ 14, 16. In the Ninth Circuit, 25% of the total recovery is the "benchmark level" for reasonable attorney fees in class action cases. *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013). Using this 25% benchmark, courts have included attorney fees for 25% of the total recovery in determining the amount in controversy under CAFA. *Id.* (contemplating inclusion of 25% of total recovery in attorney fees under CAFA); *Rwomwijhu v. SMX, LLC*, 2017 WL 1243131, at *6 (C.D. Cal. Mar. 3, 2017) (including fees in calculation, noting that "courts in the Ninth Circuit, including this one, have allowed an estimated fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA"); *Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, at *7 (C.D. Cal. Apr. 28, 2015).

66.     Assuming that Plaintiffs recovered the total amounts in controversy, an award of attorney fees in the benchmark amount of 25% of the total recovery would be $1,811,944 (.25 * $7,247,775).

### 12.    Summary

67.     Therefore, the amount in controversy is at least **$9,059,719** ($7,247,775+ $1,811,944), which satisfies the $5 million threshold for CAFA. *See* 28 U.S.C. § 1332(d).

## IV.    **DEFENDANT HAS SATISFIED THE REMAINING REMOVAL REQUIREMENTS**

68.    <u>Venue is Proper</u>. Under 28 U.S.C. § 1441(a), this Notice of Removal is filed in the District Court in which the Action is pending. The Superior Court for the County of San Diego is within the Southern District of California. 28 U.S.C. § 84(b). Therefore, venue is proper in this Court because it is the district and division embracing the place where the Action is pending. 28 U.S.C. § 1441(a).

69.    Under 28 U.S.C. §1446(a), this Notice of Removal is accompanied by the Declarations of Eric Fox, Brad Tiffee, Kamalnath Nagasubramanium, Naresh Madanlal Kothati, Ted Lemcke, Dan Michael, Madhu Beriwal, Naresh Madanlal Nothari, Kamalnath Nagasubramaniam, and Exhibits 1-3, which constitute a copy of all processes, pleadings, and orders provided to Defendants.

70.    As required by 28 U.S.C. §1446(b) and Federal Rule of Civil Procedure 6(a), this Notice of Removal was filed timely as it was served within 30 days of service of the SAC on Defendants Lemcke, Michael, and Beriwal,[5] which is the amended pleading setting forth the claim upon which the action is based. Lemcke Decl., ¶ 3; Beriwal Decl., ¶ 3; Michael Decl., ¶ 3; Fox Decl., ¶ 4.

71.    As required by 28 U.S.C. §1446(d), Defendant provided Notice of Removal to Plaintiff through their attorneys of record.

72.    As required by 28 U.S.C. §1446(d), a copy of the original Notice of Removal will be filed with the Superior Court of the State of California, for San Diego County.

73.    Therefore, there is a statutory basis for federal jurisdiction. If this Court has a question regarding the propriety of this Notice of Removal, Defendants respectfully requests it issue an Order to Show Cause so it may have an opportunity to more fully brief the grounds for this removal.

---

[5] Defendant IEM has not yet been served.

## V.    ALTERNATIVELY, DEFENDANTS SATISFY THE REMOVAL REQUIREMENTS UNDER TRADITIONAL DIVERSITY JURISDICTION

74.    Should the Court find Defendants do not meet the requirements of removal under CAFA, Defendants alternatively seek removal based on diversity jurisdiction. To satisfy diversity jurisdiction under 28 U.S.C. §1332, there must be complete diversity between parties and the amount of controversy must exceed $75,000.

75.    The complete diversity requirement is satisfied as detailed above in Section III-A.

76.    The $75,000 amount in controversy requirement is satisfied as detailed above in Section III-C.

77.    The consent of all Defendants for removal is set forth in the Declarations of Brad Tiffee ¶ 4, Klap6 Representative Kamalnath Nagasubramanium ¶ 10, Ted Lemcke ¶ 5, Dan Michael ¶ 5, Madhu Beriwal ¶ 5, Kamalnath Nagasubramaniam ¶ 3, and Naresh Madanlal Nothari ¶ 3.

78.    Accordingly, Defendants meet all the requirements for removal under diversity jurisdiction.

## VI.    CONCLUSION

For the foregoing reasons, Defendants respectfully request this Court exercise its removal jurisdiction over this action and remove the above-entitled action to the United States District Court for the Southern District of California.

1
2  DATED:  September 16, 2024          OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
3
4
5                                      By:  /s/ Eric M. Fox
6                                          Eric M. Fox
                                           Brett A. Overby
7                                          Attorneys for Defendants INNOVATIVE EMERGENCY MANAGEMENT, INC.;
8                                          TED LEMCKE; DAN MICHAEL; and MADHU BERIWAL
9
10 DATED: September 16, 2024           KAUFMAN DOLOWICH LLP
11                                     BY:  /s/ Katherine S. Catlos
                                           Katherine S. Catlos
12                                         Kartikey A. Pradhan
                                           Attorneys for Defendants
13                                         INNOVATIVE EMERGENCY MANAGEMENT, INC.; TED
14                                         LEMCKE; DAN MICHAEL; AND MADHU BERIWAL
15
16
17
18
19
20
21
22
23
24
25
26
27
28